UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Case No. 21-cr-30 (DWF/TNL) |
| Plaintiff, | |
| v. | **REPORT & RECOMMENDATION** |
| Jess Robert Bohlman, | |
| Defendant. | |

Ruth S. Shnider, Assistant United States Attorney, United States Attorney's Office, 300 South Fourth Street, Suite 600, Minneapolis, MN 55415 (for the Government); and

James S. Becker, Assistant Federal Defender, Office of the Federal Defender, 300 South Fourth Street, Suite 107, Minneapolis, MN 55415 (for Defendant).

## I. INTRODUCTION

This matter is before the Court, United States Magistrate Judge Tony N. Leung, on Defendant Jess Robert Bohlman's Pretrial Motion to Suppress Fruits of Unlawful Arrest and Search and Seizure (ECF No. 26). This motion has been referred to the undersigned for a report and recommendation to the district court, the Honorable Donovan W. Frank, District Judge of the United States District Court for the District of Minnesota, under 28 U.S.C. § 636 and D. Minn. LR 72.1.

Defendant is charged via indictment with one count of felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2); and one count of possession with intent to distribute a controlled substance in violation of 21 U.S.C. §§ 841(a)(1) and 841 (b)(1)(A). (ECF No. 1.)

A hearing was held on June 9, 2021. (ECF No. 38.) Assistant United States Attorney Ruth S. Shnider appeared on behalf of the United States of America ("Government"). Assistant Federal Defender James S. Becker appeared on behalf of Defendant Jess Robert Bohlman ("Defendant"). Post-hearing briefing is now complete, and this motion is ripe for determination by the Court.

## II.  FINDINGS OF FACT

The Court heard testimony from Officer Logan Larson, a licensed peace officer with the Centennial Lakes Police Department. The Government offered and the Court received into evidence the following exhibits: Government's Exhibit 1, Officer Larson's Body Worn Camera ("BWC") footage; and Government's Exhibit 2, a map of the intersection of Lexington Avenue and Lake Drive in Circle Pines, Minnesota. Defendant offered and the Court received into evidence the following exhibits: Defendant's Exhibit 1, a map of Lexington Avenue and Lake Drive in Circle Pines, Minnesota;[1] and Defendant's Exhibit 2, video and still photos from the same area. Based upon the file and documents contained therein, along with the testimony and exhibits presented, the undersigned makes the following findings.

Officer Larson has been employed with the Centennial Lakes Police Department since August of 2020. (Tr. 13:16-19, ECF No. 41.)[2] He previously worked as a non-sworn

---

[1] Defendant's Exhibit 1 is similar to Government's Exhibit 2 but shows a larger area around the intersection. (*See* Tr. 25:25-26:11.) Both exhibits clearly show the intersection.

[2] Although the transcript has been temporarily sealed to allow for the process of redacting any personal identifiers, *see generally* D. Minn. LR 5.5, any notice of intent to request redaction was due July 1, 2021, and no such notice was filed. (ECF No. 41.)

community service officer.  (Tr. 13:20-21.)  Officer Larson's duties include the enforcement of state statutes and city ordinances through patrolling.  (Tr. 13:12-15.)

On December 18, 2020, Officer Larson was on duty during his typical shift, which runs from 10:00 p.m. until 6:30 a.m.  (Tr. 13:23-14:4.)  At approximately 3:25 a.m., he was patrolling in the area of "Circle Pines and Lexington, right on the border."  (Tr. 14:5-6.)  While patrolling on Lake Drive and turning to go northbound on Lexington Avenue, he "saw [a] vehicle pull out from Lovell Road to Lexington Avenue going southbound."  (Tr. 14:10-13; *see also* Def.'s Ex. 1 (showing Lovell Road north of Lake Drive).)  Officer Larson "was just about to Lovell" when the vehicle "was making the turn."  (Tr. 49:7-13.)  Officer Larson responded by driving "up a little farther" on Lexington and making a U-turn because it was "3:00 in the morning, so I figured I would follow the vehicle for driving conduct."  (Tr. 14:21-24.)

Upon completing the U-turn, Officer Larson stated that he pulled within a car-length or two behind the vehicle,[3] a 2010 Cadillac with license plate number MLE 472.  (Tr. 15:3-8.)  Officer Larson was familiar with this vehicle because it was "seen frequently at a house that we had narcotics information at," and he had personally been to that particular house.  (Tr. 15:13-20.)

As both cars were traveling southbound on Lexington Avenue and approaching the intersection of Lexington Avenue and Lake Drive, Officer Larson observed that the vehicle "put on its blinker and turned left . . . Right before the crosswalk, about a car's length"

---

[3] Officer Larson estimated that a car length was "anywhere from 10 to 20 feet max."  (Tr. 20:20-22.)

3

from the intersection. (Tr. 15:23-16:3.) According to Officer Larson, he observed this driving conduct "a couple of seconds" after he began following the vehicle southbound on Lexington Avenue. (Tr. 18:6-13.) Officer Logan determined that this turning behavior was a violation of a traffic law, namely not signaling 100 feet prior to the turn. (Tr. 18:16-20.) Officer Larson's squad vehicle was not equipped with a road-facing camera, so there is no video footage of the traffic violation. (Tr. 19:6-11.)

Officer Larson decided to conduct a traffic stop. (Tr. 19:4-5.) He activated his emergency lights for the traffic stop just before the intersection of Lake Drive and Pine Drive, which was between "a half mile and a mile" from the intersection of Lexington Avenue and Lake Drive.[4] (Tr. 20:25-21:8.) Officer Larson did not activate his emergency lights until this point so that he could continue to monitor the vehicle's driving conduct, which is his typical practice. (Tr. 22:25-23:7.) He approached the driver's side of the vehicle and identified the driver as Defendant. (Tr. 21:9-13.) Defendant was the only person in the car. (Tr. 21:14-15; *see also* Gov't's Ex. 1.)

Officer Larson began speaking with Defendant and immediately let him know that the reason he was stopping him was that Defendant was "in the turn lane there and then [you] turned on your blinker, not the end of the world, more of an education thing." (Gov't's Ex. 1 at 1:03-1:11.) Defendant handed Officer Larson his driver's license. (Gov't's Ex. 1 at 1:12.) The following conversation took place:

**Defendant:** What do you mean which turn lane?

---

[4] Officer Larson's BWC activated when he activated his emergency lights. (Tr. 19:12-20:1.)

>**Officer Larson:** When you turned onto Lexington.[5]
>
>**Defendant:** Okay.
>
>**Officer Larson:** So, you were up to the light and then you put on your blinker, you just gotta signal farther than that.
>
>**Defendant:** Are you kidding me?
>
>**Officer Larson:** Like I said, not the end of the world.
>
>**Defendant:** Okay.
>
>**Officer Larson:** More just like an education thing for you.

(Gov't's Ex. 1 at 1:13 – 1:25.) During this interaction, Defendant is nodding, chuckles when he says, "Are you kidding me?", and does not challenge Officer Larson's assessment of the driving conduct. After this exchange, Officer Larson asked Defendant for his insurance. (Gov't's Ex. 1 at 1:26.) The scope of the traffic stop expanded when the insurance card Defendant produced did not cover the vehicle he was driving. This ultimately resulted in a search of Defendant's person and the vehicle, where the narcotics and firearm at issue in this case were ultimately found.

### III.  CONCLUSIONS OF LAW

Based upon the foregoing findings, the undersigned makes the following conclusions of law. Defendant does not challenge the expansion of the stop, and instead only challenges whether Officer Larson "had sufficient probable cause to believe that a traffic violation had occurred." (Def.'s Mem. in Supp. of Mot. to Suppress Evid. ("Def.'s

---

[5] During the hearing, Officer Larson clarified that he meant to say, "turned off of Lexington" as opposed to "turned onto Lexington." (Tr. 23:8-11.)

Mem. in Supp.") at 1, ECF No. 42.)

"The Fourth Amendment prohibits 'unreasonable searches and seizures.'" *Heien v. North Carolina*, 574 U.S. 54, 57 (2014); *accord United States v. Hollins*, 685 F.3d 703, 705 (8th Cir. 2012); *see also* U.S. Const. amend. IV. "A traffic stop for a suspected violation of law is a 'seizure' of the occupants of the vehicle and therefore must be conducted in accordance with the Fourth Amendment." *Heien*, 574 U.S. at 60; *accord United States v. Holly*, 983 F.3d 361, 364 (8th Cir. 2020); *Hollins*, 685 F.3d at 705.

> A traffic stop must be supported by reasonable suspicion or probable cause. A law enforcement officer has reasonable suspicion when the officer is aware of particularized, objective facts which, taken together with rational inferences from those facts, reasonably warrant suspicion that a crime is being committed. Any traffic violation, however minor, provides probable cause for a traffic stop.

*Hollins*, 685 F.3d at 706 (quotations and citations omitted); *see also, e.g.*, *Holly*, 983 F.3d at 364 ("It is well established that *any* traffic violation, regardless of its perceived severity, provides an officer with probable cause to stop the driver.") (quotation omitted); *United States v. Frasher*, 632 F.3d 450, 453 (8th Cir. 2011) ("A traffic violation, however minor, provides probable cause sufficient to satisfy the constitutional reasonableness requirement."). Under Minnesota law, a "signal of intention to turn right or left shall be given continuously during not less than the last 100 feet traveled by the vehicle before turning." Minn. Stat. § 169.19, subd. 5.

"Probable cause also exists when a reasonable officer, confronted with the facts known to the officer at the time of the stop, could have believed that there was a fair probability that a violation of law had occurred." *Holly*, 983 F.3d at 364 (quotation

omitted). Thus, "'[e]ven an officer's incomplete initial observations may give reasonable suspicion for a traffic stop,' and '[m]istakes of law or fact, if objectively reasonable, may still justify a valid stop.'" *Id.* (quoting *Hollins*, 685 F.3d at 706) (second alteration in original). "[A] traffic stop comports with the Constitution when the officer reasonably believes that the vehicle has committed a traffic infraction, even if the vehicle did not actually commit such an infraction." *United States v. Miller*, 915 F.3d 1207, 1209 (8th Cir. 2019); *see Holly*, 983 F.3d at 364.

"[I]f an officer has reasonable suspicion or probable cause to stop for a traffic violation, 'any ulterior motivation on the officer's part is irrelevant.'" *United States v. McLemore*, 887 F.3d 861, 864 (8th Cir. 2018) (quoting *United States v. Fuehrer*, 844 F.3 767, 772 (8th Cir. 2016)); *see also, e.g.*, *United States v. Gunnell*, 775 F.3d 1079, 1083 (8th Cir. 2015); *Frasher*, 632 F.3d at 453. The officer's "'[s]ubjective intentions play no role in ordinary probable-cause Fourth Amendment analysis.'" *Gunnell*, 775 F.3d at 1083 (alteration in original) (quoting *Whren v. United States*, 517 U.S. 806, 813 (1996)); *see also Fuehrer*, 844 F.3d at 772. "Similarly, it is irrelevant that the officer would have ignored the violation but for his ulterior motive." *Frasher*, 632 F.3d at 453; *accord Fuehrer*, 844 F.3d at 772; *Gunnell*, 775 F.3d at 1083.

Defendant argues that Officer Larson's testimony was inconsistent and contradictory to the point that it was unreliable and not credible. (*See, e.g.*, Def.'s Mem. in Supp. at 6 ("Officer Larson's testimony at the motions hearing raised multiple issues that render his reliability and veracity impaired, and consequentially the ultimate claim of probable cause thus fails the Constitutional requirement that it be reasonable.").)

Defendant makes a number of specific arguments. He argues that Officer Larson's testimony is inconsistent with regard to the location of Defendant's vehicle when he first observed it and the exact location of his squad when he first observed Defendant's vehicle. (*Id.* at 2-3, 7-8.) He further suggests that Officer Larson's testimony is inconsistent and unreliable because he could have witnessed Defendant making *additional* traffic violations (*id.* at 3-4, 6-7); that Officer Larson had a pretextual reason to pull the vehicle over (*id.* at 3, 7); that Officer Larson's testimony is inconsistent with an affidavit written by another law enforcement officer (*id.* at 3, 8); that Defendant would not have been able to turn right from Lovell Road onto Lexington Avenue without crossing the solid white line that made up the left-hand turn lane to turn onto Lake Drive (*id.* at 4-5); that Officer Larson did not have adequate knowledge of traffic laws and what constituted other traffic violations (*id.* at 5, 7); and Officer Larson would not have had enough time to complete his U-turn and approach Defendant's vehicle in time to observe the illegal driving conduct of failing to signal at least 100 feet prior to the intersection. (*Id.* at 8.)

The Court, however, finds credible Officer Larson's testimony that Defendant failed to signal his left hand turn at least 100 feet before the intersection of Lexington Avenue and Lake Drive, thereby committing a traffic violation under Minnesota law. Officer Larson was consistent in his testimony that he was one to two car lengths behind Defendant's vehicle when he observed it fail to signal properly. (*See* Tr. 15:6-8, 15:21-16:3, 17:8-18:5, 18:16-23, 31:3-9, 49:14-50:3.) This testimony is further supported by the BWC footage. (*See* Gov't's Ex. 1.) Almost immediately after approaching Defendant, Officer Larson informs him that he failed to signal his turn a sufficient distance from the

8

intersection. (*Id.* at 1:03-1:11.) Defendant's reaction is also not inconsistent with Officer Larson's testimony. (*See id.* at 1:13 – 1:25.)

Further, the other evidence before the Court does not contradict Officer Larson's testimony that Defendant failed to activate his turn signal at least 100 feet prior to making his left-hand turn. *See Holly*, 983 F.3d at 364 ("[T]here is no extrinsic evidence that clearly contradicts the officers' account, nor was the officers' testimony so internally inconsistent or implausible on its face that a reasonable fact-finder would not credit it.") (quotation omitted). Government's Exhibit 2 and Defendant's Exhibit 1 (the maps of the intersection) support Officer Larson's testimony. The right-hand turn lane to proceed northbound on Lexington Avenue from Lake drive is a curved lane which likely supports the efficient flow of traffic. (*See* Gov't's Ex. 2; Def.'s Ex. 1.) It is therefore understandable, particularly given the short timing of Officer Larson's entire observation, that it would be difficult to articulate his squad's exact location when he observed Defendant's vehicle. Further, nothing on the maps contradicts Officer Larson's testimony that he quickly completed a U-turn to follow Defendant southbound on Lexington Avenue where he observed the traffic violation. (*See* Gov't's Ex. 2; Def.'s Ex. 1; *see also* Def.'s Ex. 2.) Finally, the Court notes again that Officer Larson is consistent in his testimony that he was one to two car lengths behind Defendant's vehicle when he observed it fail to signal properly, and instead begin signaling approximately one car length from the crosswalk. (*See* Tr. 15:6-8, 15:21-16:3, 17:8-18:5, 18:16-23, 31:3-9, 49:14-50:3.)

Because Officer Larson's testimony was credible and his belief that Defendant violated Minnesota traffic laws by failing to initiate his vehicle's turn signal 100 feet prior

to turning was objectively reasonable, Officer Larson had probable cause for the traffic stop.[6] *See Holly*, 983 F.3d at 364; *Miller*, 915 F.3d at 1209; *Hollins*, 685 F.3d at 706. And, because the traffic stop was supported by probable cause, Officer Larson's subjective motivations for the stop are irrelevant. *See Whren*, 517 U.S. at 813; *McLemore*, 887 F.3d at 864; *Frasher*, 632 F.3d at 453.

## IV. RECOMMENDATION

Based upon the foregoing, and all files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Defendant's Pretrial Motion to Suppress Fruits of Unlawful Arrest and Search and Seizure (ECF No. 26) be **DENIED**.

Date: August  16 , 2021

                                                     *s/Tony N. Leung*
Tony N. Leung
United States Magistrate Judge
District of Minnesota

*United States v. Bohlman*
Case No. 21-cr-30 (DWF/TNL)

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those

---

[6] Because the Court finds Officer Larson's testimony credible, it declines to address the additional purported inconsistencies put forth by Defendant that the Court does not find relevant and/or determinative of its analysis.

objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.